UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| DENISE ARMSTRONG, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 3:14-cv-1270 |
| | ) | JUDGE CRENSHAW |
| TENNESSEE EDUCATION LOTTERY CORPORATION, | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

Denise Armstrong brings claims against the Tennessee Education Lottery Corporation (the "Lottery Corporation"), alleging multiple federal and state law causes of action arising from termination of her employment. Before the Court is the Lottery Corporation's motion for summary judgment. (Doc. No. 23.) For the following reasons, the motion is GRANTED on Armstrong's hostile work environment and retaliation claims and DENIED on her gender discrimination claim.

## I.  Factual Background

The Lottery Corporation is a public corporation and state instrumentality responsible for operating lottery games and generating funds for education scholarships. (Doc. No. 28 at 1.) During the time period at issue in this case, Sidney Chambers was the Executive Vice President of Sales and Marketing. (Id.) Joe Hills was the Vice President of Sales and reported to Chambers. (Doc. No. 1 at 2.) In December 2003, Chambers hired Armstrong as a District Sales Manager. (Doc. No. 28 at 1.) In April 2004, Chambers promoted her to Corporate Accounts Manager. (Id.) Hills was Armstrong's immediate supervisor. (Id.)

The Tennessee Education Implementation Law, Tennessee Code Annotated § 4-51-101 *et*

*seq*., prohibits former employees of the Lottery Corporation from representing a vendor or lottery retailer before the Lottery Corporation for a period of two years following termination of his or her employment. TENN. CODE ANN. § 4-51-110(d). The Lottery Corporation represents that through an internal policy current employees may not assist former employees to violate TENN. CODE ANN § 4-51-110(d). (Doc. No. 28 at 5.) The Lottery Corporation provides no documentation of the internal policy. In any event, Armstrong disputes that the Corporation has any such practice or policy. (Id.)

In the fall of 2011, Lauren Lovell terminated her employment with the Lottery Corporation and became an employee of Mapco, a Lottery Corporation corporate vendor. (Doc. Nos. 23-2 at 33; 28 at 2.) Chambers instructed Armstrong not to conduct Lottery Corporation business with Lovell during her two-year prohibited period. (Doc. No. 28 at 2-4.) In the spring of 2012, Chambers again reminded Armstrong of TENN. CODE ANN § 4-51-110(d), prohibiting former employees from representing any vendor or lottery retailer before the Lottery Corporation for two years. (Id. at 3.) He specifically orally instructed her not to have work related conversations with Lovell during this two-year period so that she would not assist Lovell in breaking the law. (Id. at 3-4.) Armstrong understood Chambers' instructions. (Id. at 3-4.)

On June 4, 2012, Armstrong and a female coworker, Amy Drooker, made an internal complaint to Chambers about two comments Hills made at a work convention. (Doc. No. 28 at 6-7.) First, they claimed that Hills said in their presence that he wanted to send them to a fundraiser golf tournament in their bathing suits. (Id. at 7.) Second, Hills told a woman at the convention whose husband had previously worked with Hills that he remembered seeing her husband naked in an elevator. (Id. at 7.) Chambers and the Vice-President of Human Resources, Craig Miller, conducted an investigation that resulted in Hills being verbally counseled, with a note placed in

2

his employment file, and being required to attend training on interpersonal business relationships. (Id.) Hills verbally apologized to Armstrong, and Chambers followed up with her to confirm that Hills had apologized. (Id. at 8.) Miller then sent a letter to Armstrong documenting that Hills had apologized and inviting her to contact him directly if she wanted to discuss the incidents further. (Id.) Armstrong does not identify any further complaints about Hills after this incident. (Id. at 9.) Subsequently, Drooker lodged a second complaint, alleging Hills retaliated against her because of her earlier internal complaint. Armstrong was interviewed during the retaliation investigation. (Id. at 8-9.) The Lottery Corporation concluded that Hills had not retaliated against Drooker. (Id. at 9.)

In May 2013, Armstrong admits that she paid for Lovell's lunch during a business meeting, and submitted the amount on her expense report. (Id. at 5.) Chambers investigated and confirmed that Armstrong had several business meetings with Lovell, notwithstanding his prior directives to her that such meetings would violate the Lottery Corporation's internal policy. (Doc. Nos. 23-1 at 3; 28 at 5-6.) Armstrong does not dispute that she met with Lovell to conduct business, but believes that she had Hills' approval to meet and conduct business with Lovell based on Hills' actions and statements. (Doc. No. 28 at 6.)

On June 12, 2013, the Lottery Corporation terminated Armstrong for insubordination – failing to abide by Chamber's directive not to assist Lovell in violating TENN. CODE ANN § 4-51-110(d). (Doc. No. 23-1 at 3.) Armstrong filed a grievance that upheld the termination. (Doc. No. 28 at 6.)

## II. Legal Standard

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court reviews "the

3

facts and reasonable inferences in the light most favorable to the nonmoving party . . . ." Ferrari v. Ford Motor Co., 826 F.3d 885, 891 (6th Cir. 2016) (citing Cass v. City of Dayton, 770 F.3d 368, 373 (6th Cir. 2014).

**III.     Analysis**

Armstrong brings three claims to challenge her termination: (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. and the Tennessee Human Rights Act ("THRA"), TENN. CODE ANN § 4-21-101, *et seq*.; (2) hostile work environment in violation of Title VII and the THRA; and (3) retaliation under Title VII, the THRA, and Tennessee common law.

**A.     Title VII and THRA**

Title VII and the THRA make it unlawful for an employer to discharge an employee because of her sex. 42 U.S.C. § 2000e-2(a)(1). Title VII also "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult," and prohibits conduct that is "severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment" based on gender. Meritor Savings Bank v. Vinson, 477 U.S. 57, 65, 67 (1986); accord Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Title VII's antiretaliation provision prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful employment practice by" Title VII or because an employee has made a "charge" under the statute. 42 U.S.C. § 2000e-3(a).[1]

Where, as here, a plaintiff has only circumstantial evidence, courts apply the three-part

---

[1] Armstrong's THRA claims are analyzed under Title VII's standards. Goree v. United Parcel Serv., Inc., No. 05-2393BV, 2008 WL 276482, at *5 (W.D. Tenn. Jan. 30, 2008); Parker v. Warren County Utility Dist., 2 S.W.3d 170, 172 (Tenn.1999) (recognizing the Tennessee legislature intended the THRA "to be coextensive with federal law").

burden-shifting framework developed by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and later modified by Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), to determine whether the plaintiff has proffered sufficient evidence to survive summary judgment. Jackson v. VHS Detroit Receiving Hosp., Inc., 814 F.3d 769, 776 (6th Cir. 2016). The burden is first on the employee to demonstrate a prima facie case of discrimination, hostile work environment or retaliation; it then shifts to the employer to articulate a legitimate, non-discriminatory or non-retaliatory explanation for its actions; finally, the burden shifts back to the employee to show pretext. Burdine, 450 U.S. at 253; McDonnell Douglas, 411 U.S. at 802. The plaintiff can demonstrate that the proffered reason was in fact a pretext designed to conceal unlawful discrimination or retaliation by offering evidence that the employer's stated reason: (1) had no basis in fact, (2) did not actually motivate the employer, or (3) was insufficient to warrant the adverse employment action. Loyd v. Saint Joseph Mercy Oakland, 766 F.3d 580, 590 (6th Cir. 2014). The plaintiff's burden to show pretext "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." Burdine, 450 U.S. at 256. "Thus, on summary judgment, in evaluating pretext and the plaintiff's ultimate burden, the court should consider all probative evidence in the light most favorable to the plaintiff, including the evidence presented in the prima facie stage." Jackson, 814 F.3d at 779.

    **1.    Gender Discrimination**

Armstrong can create a prima facie case of gender discrimination by showing: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was "replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006). Armstrong satisfies the first three elements. For the last

5

element of her prima facie case, she offers no evidence of whether she was replaced by someone outside of the protected class. Instead, she contends that she was treated differently than Hills, whom she alleges was similarly situated.

"[T]o be deemed 'similarly situated', "the individuals with whom the plaintiff seeks to compare his/her treatment must have: (1) dealt with the same supervisor, (2) have been subject to the same standards, and (3) have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). An employee is "not required to demonstrate an exact correlation between himself and others similarly situated; rather, he ha[s] to show only that he and his proposed comparators were similar in all relevant respects, and that he and his proposed comparators engaged in acts of comparable seriousness." Bobo v. United Parcel Serv., Inc., 665 F.3d 741, 751 (6th Cir. 2012); accord Jackson v. VHS Detroit Receiving Hosp., Inc., 814 F.3d 769, 777 (6th Cir. 2016); Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir.1998).

Viewing the evidence in the light most favorable to Armstrong, a jury could find that Hills and Armstrong are similarly situated. Both were Lottery Corporation managers and reported to Chambers. Both were subject to the same internal policy prohibiting current employees from assisting former employees in violating TENN. CODE ANN § 4-51-110(d). There are disputed issues of material facts on whether Hills directly or indirectly instructed her to meet and transact business with Lovell and whether he knowingly approved Lovell's request for a lottery machine during the prohibited period.

Those same disputed issues of material facts make questionable the Lottery Corporation's legitimate, non-discriminatory explanation for terminating her. Burdine, 450 U.S. at

6

253; McDonnell Douglas, 411 U.S. at 802. The Lottery Corporation's internal policy for current employees is not documented and set forth in a single sentence in Chamber's affidavit. (Doc. No. 23-1 at 3) ("It is [the Lottery Corporation's] policy and practice not to allow current employees to conduct business with former employees for two years after their termination of employment so that current employees do not assist former employees in violating the law."). Even if that is sufficient to articulate its legitimate non-discriminatory reason, there is a disputed issue of fact at the pretext stage. The Corporation and Armstrong tell two different stories on whether Hills had knowledge of and approved Armstrong's business meetings and transactions with Lovell. Further, Armstrong asserts that Hills in fact approved a request for a lottery machine for Mapco that he knew came directly from Lovell, which, if true, violates the internal policy for current employees. A reasonable jury could accept Armstrong's version of events and reject the Lottery Corporation's explanation for discharging Armstrong because "there is a sufficient basis *in the evidence* for doing so." Abdulnour v. Campbell Soup Supply Co., LLC, 502 F.3d 496, 502 (6th Cir. 2007) (quoting Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1083 (6th Cir. 1994) (emphasis in original)). Accordingly, the Lottery Corporation's motion for summary judgment is denied on Armstrong's gender discrimination claim.

2. **Hostile Work Environment**

Armstrong may establish a prima facie case of a hostile work environment by showing: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment objectively and subjectively interfered with her work performance by creating an environment that was intimidating, hostile, or offensive; and (5) the employer knew or should have known about the harassing conduct but failed to take prompt corrective action. Bailey v. USF Holland, Inc., 526 F.3d 880, 885 (6th Cir.

2008). "In determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment under the Harris standard, it is well-established that the court must consider the totality of circumstances." Williams v. Gen. Motors Corp., 187 F.3d 553, 562 (6th Cir. 1999) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993)). To determine whether an environment is sufficiently hostile or abusive, courts consider the following, non-exhaustive list of relevant factors:

> [T]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Harris, 510 U.S. at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." Id.

The Lottery Corporation argues that it is entitled to judgment on Armstrong's hostile work environment claim because Hills' comments were not directed at Armstrong, are hearsay, were not based on her gender, or do not rise to the level of severe and pervasive harassment. (Doc. No. 32 at 4-5.) The Lottery Corporation also argues that, even if Hills' comments constituted sexual harassment, it took prompt and effective actions to remediate that harassment. (Id.) Armstrong responds that the Lottery Corporation believed the two comments about which she complained were severe because it disciplined Hills, two other employees submitted evidence of other objectionable comments, and the comments and conduct, viewed in their totality, were sufficiently severe or pervasive to alter the conditions of her employment. (Doc. No. 27 at 13-16.)

8

Hills' two comments that were the subject of Armstrong's and Drooker's internal complaint are woefully insufficient alone to establish a hostile work environment claim. Even if an additional six comments or conduct cited in her brief are considered, notwithstanding that they were not presented to the Court properly,[2] her hostile work environment claim must still be dismissed. Armstrong was subjectively embarrassed by Hills' comment that he would put Armstrong and Drooker on the golf course in swimsuits for a fundraiser, but this comment was isolated and never repeated, which supports a finding that the Lottery Corporation's remediation was effective. Armstrong's reliance on Hills' comment to a woman that he had seen her husband naked in an elevator is of little relevance because Armstrong provides no evidence that she was present when Hills made the comment or the circumstances surrounding when he did so.

Armstrong also alleges other comments and conduct created a hostile work environment:

- Chambers stated that he wanted "young, pretty girls" at special events, and Hills' comment that it would be "funny" to have "a hot yoga contest" for a fundraiser, because it "would be like having a wet t-shirt contest."

- Hills took a picture of a female representative of another company in front of the Lottery Corporation's booth and also took a picture with the woman and Armstrong, after the woman asked Armstrong to join the picture.

- Hills' comment to Armstrong, "my wife would be pissed about me saying this but what is she doing with her ass?"

- Chambers gestured at a woman as he, Hills, and Armstrong were walking and said to Hills, "you're not supposed to be looking at what I'm looking at," which Armstrong interpreted to be a reference to "her ass."

---

[2] Armstrong provides no citations to the record to support her contention that other employees submitted evidence that would support a hostile work environment finding. (Doc. No. 32 at 14.) The Local Rules provide that, if a non-moving party has material and genuine issues to be tried, "[e]ach disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute." Local Rule 56.01(c); see also InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (noting "designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies" and that local court rule can "fairly apprise[]" the nonmoving party "of how much specificity the district court requires"). The Court is not "obligated to wade through" the record to find Armstrong's evidence. InterRoyal, 889 F.2d at 111. Thus, the Court will not consider the evidence by other employees alluded to by Armstrong in her brief without citations to the record.

- Hills complimented Armstrong on losing weight during her performance review.

Armstrong does not provide dates for any of these comments, some were not directed to her, some are not objectively offensive, and may lack any explanation of the surrounding circumstances. Instead, she testified that these types of comments "happened multiple times" during her ten-year term at the Lottery Corporation.

Viewing the totality of the circumstances in the light most favorable to Armstrong and comparing it to conduct in other cases, no reasonable jury could find that the challenged comments and conduct that transpired over a ten-year time period were sufficiently severe "to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). See, e.g., Clay v. United Parcel Serv., Inc., 501 F.3d 695, 707-08 (6th Cir. 2007) ("fifteen specific incidents spanning a two-year period," were "isolated" and "not pervasive"); Williams v. CSX Transp. Co., 533 Fed. Appx. 637, 641 (6th Cir. 2013); ("where the court finds that comments were not directed at the plaintiff, it weighs against a finding of an objectively hostile environment"); Rayford v. Illinois Cent. R.R., 489 Fed. Appx. 1, 5 (6th Cir. 2012) (finding comments made three or four times a week such as being called "sweet booty," being told a co-worker "wanted to mix coffee with his cream" and that "Ray got a big dick" for him were "not so severe and pervasive that a reasonable person would find his work environment hostile and abusive"). As Armstrong has not established a prima facie case of a hostile work environment, the Lottery Corporation's motion for summary judgment on that claim is granted.

**B.     Retaliation**

Armstrong argues that the Lottery Corporation fired her in retaliation for her internal harassment complaint against Hills. Armstrong also argues that she has presented direct evidence of retaliation, but she never identifies that direct evidence. (Doc. No. 27 at 23.) Thus, she is subject

to the McDonnell Douglas burden-shifting framework.

To establish a prima facie case of retaliation, the plaintiff must show: (1) she engaged in protected activity; (2) the exercise of protected rights was known to the employer; (3) the employer took an adverse employment action against the plaintiff, and (4) there was a causal connection between the protected activity and the adverse action. Taylor v. Geithner, 703 F.3d 328, 336 (6th Cir. 2013) (Title VII retaliation); Goree v. United Parcel Serv., Inc., 490 S.W.3d 413, 434 (Tenn. Ct. App. 2015), appeal denied (Mar. 23, 2016) (THRA retaliation). To establish a causal connection, the plaintiff must establish that her protected activity was a "but-for" cause of the alleged adverse action by the employer. University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2533–34 (2013). A claim for retaliation under the Tennessee common law requires the same elements as under Title VII and the THRA except the plaintiff must prove that her protected activity was a "substantial factor" in the employer's decision to discharge her. Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 437–38 (Tenn. 2011).

There is no dispute that Armstrong has satisfied the first three elements of her prima facie case—her internal complaint was protected activity, Hills and Chambers were aware of her protected activity, and her termination is an adverse employment action. However, the Lottery Corporation argues that Armstrong cannot prove a causal connection between her internal complaint and her termination. (Doc. No. 24 at 8-11.) Armstrong responds that the Lottery Corporation terminated her after she complained of a hostile work environment in June 2012 and because of contact that she had with Lovell as early as October 2011. (Id. at 23-24.) Her contact with Lovell before her protected activity has no relevance to her ability to establish a causal connection between her June 2012 internal complaint and her June 2013 termination.

Armstrong has no evidence from which a reasonable jury could find but for or substantial

factor causation. There is no temporal proximity between her complaint about Hills in June 2012 and her termination a year later in June 2013. "[A] causal connection for purposes of establishing a prima facie case of retaliation can be shown through knowledge [of the complaints] coupled with a closeness in time that creates an inference of causation.... However, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." Imwalle v. Reliance Med. Prod., Inc., 515 F.3d 531, 550 (6th Cir. 2008). Armstrong has neither temporal proximity nor other evidence, compelling or otherwise. See, e.g., Kean v. IT-Works, Inc., 466 Fed. App'x 468, 471 (6th Cir. 2012) (holding discharge that "came roughly two-and-a-half months after the complaint" did not support "an inference of causation"); Cooper v. City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir. 1986) (holding a period of more than four months is too long to support an inference of causation).

Armstrong cannot show that her June 2012 complaint about Hills' comments were either a substantial factor or the but for cause of her termination a year later, under Title VII, the THRA, or the Tennessee common law. She has not established a prima facie retaliation case. Accordingly, the Court enters judgment for the Lottery Corporation on these claims.

## IV. Conclusion

For the foregoing reasons, the Court the Lottery Corporation's motion for summary judgment is GRANTED as to Armstrong's hostile work environment and retaliation claims and DENIED as to her gender discrimination claim.

An appropriate order shall issue.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE